IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

| | | |
|---|---|---|
| TAMAR RUTH | : | |
|    13613 Sir Thomas Way, 32 | : | |
|    Silver Spring, 20904 | : | |
| | : | |
|    Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY BOARD OF | : | **Jury Demanded** |
| EDUCATION | : | |
| Montgomery County Public Schools | : | |
| Carver Educational Services Center | : | |
| 850 Hungerford Drive, Room 123 | : | |
| Rockville, MD 20850 | : | |
| | : | |
| THOMAS W. TAYLOR | : | |
| SUPERINTENDENT OF MONTGOMERY | : | |
| COUNTY SCHOOLS | : | |
| Carver Educational Services Center | : | |
| 850 Hungerford Drive, Room 123 | : | |
| Rockville, MD 20850 | : | |
| | : | |
|    Defendants. | : | |

**COMPLAINT OF DISCRIMINATION AND RETALIATION**

Plaintiff, Tamar Ruth, by and through her counsel, brings this action of discrimination based on race, color and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended; discrimination and retaliation based on race and color pursuant to the Civil Rights Act of 1866; and discrimination based on disability pursuant to the Americans with Disabilities Act against Montgomery County Public Schools and its Superintendent

1

**I.      JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of the instant complaint pursuant to 28 U.S.C. § 1331 because the Plaintiff brings an action arising under the laws of the United States.

2. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391 because the unlawful employment practices were committed and the employment records were maintained, in whole or in part, in this District.

**II.     PARTIES**

3. Plaintiff, Tamar Ruth ("Ruth") is a resident and citizen of Montgomery County, Maryland. At all times material to the allegations of this Complaint, Ruth was within the jurisdiction of the United States and employed by Montgomery County Public Schools. Ruth has a disability based on her mental health.

4. Defendant, Board of Education of Montgomery County Public Schools ("MPCS"), at all times material to the allegations of the complaint, was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act and employed Plaintiff, Ruth as a teacher and Assistant Principal.

5. Defendant, Thomas W. Taylor, Superintendent of Montgomery County Public Schools, in his official capacity ("Superintendent"), was at all times relevant responsible for employment of teachers in Montgomery County, Maryland, including school and position assignments.

**III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Ruth filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on November 20, 2024.

7. The EEOC issued a Notice of Rights to Nakhid on March 3, 2025. Ruth received the notice subsequent to March 3, 2025 and has timely filed the instant action within the requisite 90 day period.

**IV.   FACTS**

8. Ruth began her employment with MPCS in 1996 as a classroom teacher. Her speciality and experience was in the area of elementary education.

9. In 2006, Ruth, with trepidation, accepted a promotion as an Assistant Principal. MCPS directed that she open a new elementary school and she accepted that role and responsibility.

10. After moving from the classroom to administration, Ruth had a more expansive view concerning discrimination in the school system. While in her capacity as Assistant Principal, she observed disparate treatment against people of color generally, she particularly observed the disparate and discriminatory treatment of African American families in the school system and particularly African American boys.

11. Ruth began advocating for African American families, to include those in low income populations and those with special needs. In so doing, she experienced microaggressions and pushback by her superiors and other staff members. Their discriminatory conduct against her did not, however, stop Ruth's advocacy. Ruth joined the Board of Directors for the Teacher's Union and a Montgomery County advisory board so that she could continue to shine light on the

issues of discrimination and the mistreatment of Black students she observed.

12. In prior moves to schools within the county, Ruth sought out positions at elementary schools that were Title I or in low income populations with high numbers of students with special needs and even in Spanish speaking elementary schools or elementary schools where there were high numbers of ESL students. She possessed an expertise in engaging students in marginalized populations and setting them on track for learning and success.

13. In 2018, MCPS moved Ruth again. Despite the absence of any performance issues or punitive justification, MCPS sent Ruth to a school which did not have a large population with special needs or who would require advocacy or special attention. She observed that the school had a culture of racism and there were a number of events that she learned of or experienced which revealed that racist culture. During her tenure, a young African American student submitted a letter detailing incidents of discrimination and indicating the student felt subjected to discrimination. The PTA president, who is gay and a Latina and who advocated for marginalized groups, had her home destroyed by fire in what was suspected to be arson.

14. In July 2021, as a result of the pressures of advocacy, the COVID pandemic and the microaggressions Ruth experienced in the work environment, she took a leave of absence. The leave was premised in the stress and her diminished mental health, to include Ruth suffering from post traumatic stress disorder and anxiety.

15. While Ruth was on leave, she attempted to negotiate a reasonable accommodation with respect to her mental health condition so that she could return to work. She requested part-time work and indicated she would be willing to accept a demotion and return to the classroom. The interactive process went on for a significant amount of time and MCPS

ultimately denied Ruth's request for accommodation.

16.     On February 14, 2024, Ruth filed a bullying/harassment complaint with the MCPS Ombudsmen.  While she received a communication indicating the matters raised in her complaint would be looked into, Ruth never heard of anything further and she never received any communication concerning resolution.

17.     Ruth's physician cleared her to return to work on March 4, 2024.  MCPS initially assigned Ruth to an elementary school upon her return.  However, she only remained at the first school in the Assistant Principal capacity for one week.  Thereafter, MCPS transferred her to a middle school.  Ruth asserted that she did not have middle school experience and she believed it an inappropriate placement.  After another week, MCPS transferred her to Ritchie Park Elementary.

18.     The principal at the time of Ruth's transfer in March 2024 to Ritchie Park Elementary was Andrew Winter.   Mr. Winter was on leave at the time of Ruth's transfer based on allegations of child abuse and as such, she was made Acting Assistant Principal of the school. Ruth believed the transfer to be retaliatory as she had previously complained about Andrew Winter and had expressed a desire to refrain from working with him or as his subordinate prior to the transfer.  Mr. Winter had a poor reputation in terms of working with African American families, students and staff and Ruth had her own observations and exchanges with Winter which led her to believe he harbored discriminatory animus against African Americans.  Ruth believed and observed that Mr. created a culture of race discrimination and retaliation at Ritchie Park Elementary.

19.     When Ruth began working as Acting Assistant Principal, she heard staff speaking

of an African American student and characterizing him pejoratively as a "bad boy." The young man had been out of school when she began but soon after returned. After Ruth began working with him, she established a pleasant rapport and was able to look deeper into his experience and the concerns, though raised through the lens of racism. She learned he did not have an IEP (and should have) and that he had been subjected to inappropriate actions by staff at the school. As a result, Ruth filed a complaint of bias and hate on behalf of the student in May 2024. When such a form is submitted by staff, it is distributed to representatives of MCPS, the relevant school's principal and the police. Ruth was interviewed by the police and she also had communications with Human Resources about the complaint.

20. Between February and May 2024, Ruth had also been looking for positions she could encumber which she believed to be more favorable, to include in terms of her mental health condition. She communicated with Human Resources about the positions she sought and was told that there were no available positions for her or that there were no Assistant Principal positions to which she could transfer. Ruth knew that there were available positions during the time of her applications and MCPS denied these positions to her because of her complaints and advocacy for herself and African American students.

21. Ruth also resubmitted a reasonable accommodation request in February 2024. The request would allow her to work in an environment with less stress and discrimination and one that is more suited for her given her anxiety and other mental conditions. MCPS denied the request.

22. In May 2024, Ruth's supervisor advised her of the requirement to attend a previously unscheduled IEP meeting for a student. She was told she needed to run the IEP

meeting with a 5th grade student via the Zoom video conferencing platform. Ruth complied. However, in the midst of the meeting, a student who was upset or disturbed and who should have been in the classroom came to Ruth's door. She paused the meeting to address the student, who was very upset. She believed she had calmed the situation and returned to the Zoom meeting, however the student continued to beat at her door in an attempt to gain entry. The situation was disturbing and extremely unsettling for Ruth.

23. Ruth contacted her therapist following the disturbance as she feared she was in the midst of an emotional breakdown. The stress from the circumstances with the transfer and the hostility she received exacerbated her mental condition. The therapist recommended that Ruth go to a hospital and she also complied. She was hospitalized for a week and has continued therapy following her discharge.

24. Ruth would be able to return to her position with a reasonable accommodation from MCPS. She again requested reasonable accommodation on January 20, 2025 in order to facilitate her return to work. Ruth requested that she be permitted to work part-time initially and to gradually increase her hours of work; that functions of her Assistant Principal position be transferred to other staff members for support; to be provided with written instructions for work assignments; to be provided with additional supervision and/or clinical support with new and/or complex projects, progress performance reviews and any communication issues related to her disability; and to be provided with breaks, as needed. MCPS denied each of her requests for reasonable accommodation on February 26, 2025.

V.     **CLAIMS**

   A.     **Discrimination In Violation of Title VII of the Civil Rights Act and 42 U.S.C. §1981.**

   25.    Plaintiff restates and realleges the allegations of paragraphs one (1) through 24 as if fully set forth herein and further state as follows:

   26.    Defendants subjected Plaintiff to discrimination based on her race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended, by transferring her to less desirable positions and by refusing transfers to the positions she sought or to which she applied.

   27.    Defendants similarly subjected Plaintiff to discrimination and thwarted Plaintiff's contract opportunities and equal enjoyment of the rights, privileges and benefits enjoyed by white citizens based on her race in violation of the Civil Rights Act of 1866.

   28.    Defendants, which have a history of discrimination and hostility towards individuals who are African American and treat African Americans them less favorably, to include African American staff like Ruth, in the terms and conditions of their employment and as compared to those who are not African American or persons of color.

   29.    As a direct and proximate cause of Defendants' discriminatory acts, Plaintiff has and will continue to suffer pecuniary losses, emotional anguish and stress, and has been negatively impacted in terms of employment opportunities and compensation related thereto. Defendants' conduct was willful and wanton and Defendants knew their actions would cause injury to Plaintiff.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**B.   Retaliation In Violation of Title VII of the Civil Rights Act and 42 U.S.C. §1981.**

30.    Plaintiff restates and realleges the allegations of paragraphs one (1) through 24 as if fully set forth herein and further alleges as follows:

31.    Plaintiff's supervisors and MCPS Human Resources were aware of her protected activity, to include advocating on behalf of African American students and African American MCPS families as well as complaining of her own discriminatory treatment under Mr. Winter and others.

32.    As a result of Plaintiff's protected activity, Defendants engaged in conduct which would have dissuaded a reasonable person from complaining, to include transferring Plaintiff to undesirable positions and refusing her transfer requests under circumstances where individuals who had not engaged in protected activity would be permitted to transfer.

33.    As a direct and proximate result of Defendants' retaliatory conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. §1981, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Defendants' conduct was willful and wanton and Defendants knew their actions would cause injury to Plaintiff.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**C.   Discrimination and Retaliation in Violation of the Americans With Disabilities Acts (42 U.S.C. § 12101).**

34.    Plaintiff restates and realleges the allegations of paragraphs one (1) through 24 as if fully set forth herein and further alleges as follows:

35. Plaintiff's supervisors involuntarily reassigned or transferred her, refused to allow her to transfer to desirable positions, and failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act.

59. Plaintiff requested part-time work or a transfer to a classroom teacher assignment or other assignment where Plaintiff could perform her duties without the significant stress, anxiety and harassment she endured or that was caused by: (1) schools with staff and supervisors who harbored discriminatory animus against African American staff and students; (2) schools for which Plaintiff had not been trained or was qualified to perform as an administrator or teacher; and (3) schools which did not serve the populations with whom Plaintiff had become accustomed and where she was able to perform her best work.

60. Defendants could provide a reasonable accommodation without hardship for Plaintiff as there were a number of assignments where Plaintiff could have been transferred to which would reduce the stress and anxiety or where Plaintiff would not need to work under a discriminatory supervisor or where Plaintiff could perform part-time.  Defendants could have easily satisfied Plaintiff's additional requests, to include reasonable breaks, supports for projects and meetings, gradual increase in the number of hours upon her return to work, etc., but refused to do so.

61. Plaintiff's supervisors also subjected Plaintiff to retaliation because she complained about disability discrimination and Defendants' refusal to afford her a reasonable accommodation, all of which constitutes protected activity.

62. As a direct and proximate result of Defendants' discriminatory and retaliatory conduct and refusal to provide a reasonable accommodation in violation of the Amereicans with

Disabilities Act, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Defendants' conduct was willful and wanton and Defendants knew their actions would cause injury to Plaintiff. Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

## VI.    RELIEF

Plaintiff requests the following relief:

(1)    An order declaring that Defendants have violated her rights as secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, *et. seq.*); the Civil Rights Act of 1866 (42 U.S.C.§ 1981); and the Americans With Disabilities Act (42 U.S.C. § 12101);

(2)    An order enjoining Defendants against continued and further discrimination, and retaliation against Plaintiff and requiring Defendants to afford Plaintiff a reasonable accommodation;

(3)    Compensatory damages in amounts to be determined by a jury;

(4)    Attorney's fees, case expenses and court costs; and

(5)    Any other relief determined appropriate.

**JURY DEMANDED.**

Respectfully submitted:                                                                                          May 30, 2025

_____
Eden Brown Gaines #489862
Brown Gaines, LLC
80 M Street, SE
Suite 100
Washington, DC 20003
Main (202) 573-6865
Fax (301) 542-0032
egaines@browngaines.com